The next case is Turner v. Pekin Life Insurance Company, and for the appellant we have Mr. Martinkus, and for the appellee, Mr. Chemeris. Good to see you. May it please the Court. Counsel. The question I guess I first ask is summary judgment as to what? And I think that the Court needs to really look at that to determine what issue I'm really raising. When Pekin filed its motion for summary judgment, it did so at a time when its affirmative defenses had been dismissed as a matter of law by virtue of the Court's ruling. Its attempt to re-plead them by asserting affirmative defenses was clearly in violation of 2619D. That section of the Code simply states that if a trial court rules substantively on an issue, one cannot then re-plead those affirmative defenses. And that's exactly what we had here. This was a case in which the widow, Sarah, filed a complaint to obtain the insurance proceeds, a $100,000 policy. There was no issue with respect to the fact that she had a life insurance policy on her husband that the policy amounts to $100,000. The sole basis for Pekin's defending this claim was that it believed that it had properly rescinded the policy based upon its review of medical records. The trial court, based upon the Supreme Court decision of Powell and a couple other cases, of an issue found that Pekin was barred from asserting its defense because two years had passed. The trial court took that position when it denied the motion to dismiss the claim and found that, in fact, it was barred from making any claim with respect to rescission. And that's where we start with the motion that the court basically invited me to file. I filed a motion for summary judgment. If you look at the August docket sheet, the August docket sheet specifically says that that motion, that motion, not any other motion, the motion of 7611, our motion, clauses continue to 820 through 11 at 2 p.m. in court of H on the motion for summary judgment filed this date. The motion that's being referenced is the motion for summary judgment by the plaintiff. Since the only issue was whether or not there was a policy and how much the policy, the face amount of the policy was, this was completely right for summary judgment. It's, the analogy would be like this. If I filed a motion, I'm sorry, if I filed a complaint and the trial court dismissed that complaint with prejudice, and then I, within 30 days, file a motion for summary judgment on the dismissed complaint, and the trial court grants the motion for summary judgment, that's truly the analogy we have here. Until such time as the trial court reversed its decision, we don't even have an issue. I had a motion filed to strike these affirmative defenses based upon the code section I just mentioned. The court had already told Pekin, it cannot, in fact, But that was an interlocutory ruling, wasn't it? That's true. The trial court had the power to change its mind on that. Absolutely, and that's the whole point. If the court had been asked by Pekin to come in and change its position based upon these new rulings, then we would have been at issue. They could have filed the affirmative defenses appropriately. Summary judgment could have been then heard on that issue. But you have to understand, until the actual hearing on 823, when the court had consistently held that Pekin was barred from having a right to file a rescission action, until that moment, until the court decided and changed his mind, there was nothing at issue. Pekin had nothing at issue. He had filed, without effect, I believe, affirmative defenses that clearly weren't permitted. I filed, right after that, a motion to strike this for those reasons. So right then, until the court made its ruling denying my motion for summary judgment, until that very moment, I had no reason to believe that there was anything at issue for me to defend from that perspective. So I think that's one real important thing here, is that you have a situation in which the trial court all along is saying, you know, you're not going to be able to assert this affirmative defense. It invites me to file a motion for summary judgment. And you have to understand also that this was the position of the trial court from the very beginning. Now, I believe that the trial court ultimately was correct. I don't think I was right with respect to those cases, because we did look at some statutory enactments after those cases. So I think the court did get it right. I'm not complaining about that. I think the court did get it right, and Pekin should have been permitted to assert its affirmative defense of rescission. The issue then would have been, at that point, once we had an opportunity to properly discover what, in fact, information they had, what did they use to base its decision not to issue a policy, what has its past history been, all of these sorts of things that one would typically do in discovery. The court needs to keep in mind that there was no need for discovery in this case ever until the moment after the court denied my motion. And then even though it wasn't technically set by the court, then the court proceeded to grant their motion out of the blue. So this was a case where it seems to me that there was almost no time for me, well, there literally was no time for me, until the court denied my motion. And over my objection, I asked the court to continue its hearing. It filed a motion, which I had asked the court to continue, if it did not grant my motion, not to proceed immediately to hear the motion that Pekin had filed. So procedurally, it seems to me that I was in an impossible position, because the court had denied Pekin's right to file a rescission, could not file firm defenses, and granted a motion for summary judgment. If you look at the motion for summary judgment, they don't tell you what they're seeking summary judgment on. They don't set forth any basis for it. It's just the barest of motion. It simply says, hey, judge, enter summary judgment in its favor. It doesn't say any basis for it. It doesn't state what issues that Pekin seeks the court to issue summary judgment upon. So it's the barest of motions, and at that point when it filed it, they weren't at issue with respect to any motion. What was there to be summary judgment on? The court had already disposed of, now wrongfully, but the court had already disposed of the issues of rescission. And then I guess the next thing is, if you really look at Steiner's affidavit, the court had already rejected that affidavit when they filed a motion to dismiss, and we had a hearing on that, and the court ruled favorably for my client. But Steiner's affidavit is woefully inadequate for lots of reasons. It is not the sort of affidavit upon which summary judgment can or should be granted. If you start off with the rules under Supreme Court Rule 191, and you look specifically at what the requirements are in an affidavit for summary judgment, it says, the affidavit shall set forth the particularity, the facts upon which the claim, counterclaim, or defense is based, shall have attached thereto sworn or certified copies of all the papers upon which the affidavit relies, shall not consist of conclusions but of facts admissible in evidence, and shall affirmably show that affidavits sworn as witnesses can testify competently thereto. Well, what do you have when you look at her affidavit? First of all, there's no medical records attached. She makes reference to some medical records that she apparently obtained after the client's decedent died and we made a demand for payment. So she makes reference to some medical records. They're not attached. She interprets the medical records, which she then concludes he had a condition or high blood pressure. She's not a medical doctor. She's incompetent. She would never have been able to testify at trial if, in fact, they offered her as a witness to testify as to his medical condition. She would have been incompetent to offer that opinion. They offered no doctor who could have come in and interpreted the records, could have said that the records of this gentleman support the fact that he had high blood pressure. There was nothing whatsoever to state that. And then most importantly, there was no particularity. She set forth no facts with respect to why Mr. Turner could not have been issued a policy but at a higher rate. And what is particularly compelling about that is that if you look, and it's attached in the brief of the policy, the policy very clearly shows that in order to peak and to raise an affirmative defense, it has to show, one, death within two years. After two years, it's barred from any rescission action. That obviously happened. Two, that the answer in the application was not true and complete. That did not happen. There was nothing in her affidavit which would prove that. And three, if we had known the truth, we would not have issued the policy. Well, there she simply has a self-serving statement that we wouldn't have issued the policy. But we have no facts concerning how many policies Deacon does issue with high blood pressure, doesn't charge a detainment. These are all the things that would have been reasonable to have discovery on. There was never a case management conference in this case. The court did not follow the directives of the Supreme Court and set a case management conference of initial. And I'm not blaming the court for that because I think from the very beginning it was clear. The court, right or wrong, decided that Deacon was barred from asserting this defense. That's the way this whole case proceeded to the very day of the hearing. I mean, you can't imagine my shock when the court not only doesn't grant my motion, but then without really no notice grants theirs and no opportunity for discovery. You know, this is a widow and small kids and she should have a right. She may not win. We may not win this case. But I do think she should have gotten her day in court. We should have been able to ask Deacon, well, what's your basis for this? What medical records do you believe? We don't even know, Judge. I mean, she makes reference to some that it doesn't attach to. What records do you believe support this allegation that he had this condition and that he had this problem and all that? And then we would have been able to ask the underwriting department, well, how many cases do you issue policies where high blood pressure is at issue? And those are the sort of things that I believe would have come out. And, again, if you were to reverse this, we might go back to the trial court and after discovery realize we can't win because Deacon doesn't have any evidence to show that this policy would have been issued. It's possible. I don't think that's the case because I think that insurance companies do issue policies with ratings and they pay extra premiums and so forth. But for the trial courts who have taken the position that Deacon cannot raise any of these issues for the entire case and then on the day that we, in fact, have a hearing on my motion for summary judgment to reverse position and then immediately grant their motion, it was arbitrary. It really was. There was no reason why the court couldn't have given us 90 days, 60 days, something, to engage in proper discovery so we could have discovered all of the information leading up to the conclusion set forth in Mrs. Steiner's affidavit. But her affidavit is clearly inadequate. She could have never put in the medical records and evidence. She could have never testified and interpreted what those medical records were. She needed a doctor to do that. She could have then looked at the doctor's interpretation and said, based upon that interpretation, we elect not to do so. But I think if you look at this case and you look at it from a global perspective, this is a difficult one for me because, I mean, obviously we're sitting here and we have a ruling of the court. They file affirmative defenses in complete violation of the statute. They've already been ruled upon. And then the court grants summary judgment on affirmative defenses that aren't properly before the court. We won't even have issue with respect to those because there's never any ruling on my motion to strike them. So we're asking that you reverse this and give us an opportunity to engage in discovery and see if we have a case. We may not have a case, but I believe Mrs. Turner and her kids are entitled to that. Mr. Turner paid the money. He can accept the money. And they had opportunity to do what they wanted with respect to their application, the medical records. They don't do anything until he dies. And then the sense I get from their briefs is, well, if we rescind it, that's it. You don't have any ability to actually go to court and have a juror or judge determine were these conditions met. Would they have issued a policy at a higher premium? Those are the issues that I believe should be properly before the court. We should be permitted to engage in discovery to flesh out whether or not we have a case. Any questions? Thank you. I don't see any. Thank you. Good morning, Your Honors. May it please the Court. Good morning, Counsel. Good morning. For Pekin Life Insurance Company, Robert Chalmers from Pretzel and Stauffer in Chicago. Your Honors, I'm somewhat confused after listening to Mr. Martinez's argument. Kids on the playground have a do-over. A golfer asks for a mulligan. You don't come as the appellant to the Illinois Appellate Court and say, attack an affidavit during oral argument that you didn't file a motion to strike in the trial court. You talk about a motion that you claimed was improper where you didn't file a motion to strike in the trial court. Well, wouldn't you agree that Judge Jones kind of did an unanticipated 180 at this hearing? Well, Judge Jones got it right. He may have. There is no surprise to the plaintiff from the standpoint that the Steiner affidavit was filed in October 2010 in support of a 2619 motion to dismiss, not much different than a motion for summary judgment, which was what was at issue in the Lower case in the Supreme Court. Judge Jones somehow followed Ramsey and Powell, cases that are from 1921 and 1924, respectively, and said you have to file a suit to rescind, even though neither case actually says that. The Powell case says you have to have affirmative conduct. Affirmative conduct was the November 6, 2008 letter advising the widow that the claim was being dishonored and the money was returned. There hasn't been a case in 90 years that says you have to file a suit to rescind a life insurance policy within the contestable period. Not only that, he denies the motion to dismiss. He didn't reject the Steiner affidavit. You can read the transcript. The word rejection is not even in there. To say the affidavit is woefully inadequate, well, gee, that's why you moved to strike it. You can't complain about an affidavit that you haven't moved to strike. There was no objection to the affidavit in the trial court. We hear that now. There was no attempt at discovery in the trial court. We hear that now. Why should they attempt discovery when the judge has ruled in their favor on the issue? The judge tells them, why don't you go ahead and file a motion for summary judgment? They go ahead and file a motion for summary judgment. You file one in response. And all of a sudden, out of the blue, the trial judge grants your motion for summary judgment. Not much different than what this court decided in Sands where two defendants are in a case. The one doing all the work winds up settling out on the eve of trial. The other one gets left holding the bag, makes a motion to continue.  I didn't have time to do discovery. You've been in a case for three years. You didn't do any discovery. Why should he have done any discovery? All the judge did was deny a motion to dismiss. He didn't enter judgment for the plaintiff. Didn't the judge agree with their argument that you had to file, you, the insurance company, had to file a contest or whatever within two years? Well, the judge agreed that the Supreme Court decisions from Ramsey and Powell required a suit, and that Beacon didn't file a suit, and that Beacon couldn't rescind my letter. Beacon then files an answer. Has it? It's entitled to do. In its answer, it has a counterclaim for declaratory judgment. A counterclaim includes a claim for rescission. It has affirmative defenses. The plaintiff files motions, and again, doesn't move on his own motions. This is the case the plaintiff wishes he could have a do-over on, or she could have a do-over on. No motion to strike the affidavit. So you're telling me the trial court did not do a 180 on the arguments on the motions for summary judgment? Oh, it did. It did. How was Mr. Martinkus supposed to anticipate that? Well, Mr. Martinkus was aware that Beacon's position had not changed. Well, yeah. Beacon's position, they had affirmative defenses, and they didn't have to file a suit to rescind the policy. They asked the court. We asked the court for a 308 certification to this court that there is no suit requirement for rescission. The judge denied that motion. Shortly thereafter, he files a motion for summary judgment. Meanwhile, doesn't answer the counterclaim, moves to dismiss the counterclaim, moves to strike the affirmative defenses, never calls any of the plaintiff's motions for hearing. In August, the motions are deemed withdrawn because there weren't calls for hearing. At that hearing, now this wasn't a short, perfunctory hearing. I believe the transcripts, 42 pages, most of the discussion is the court and Mr. Martinkus. Because his sole position was, did a suit have to be filed? The judge said, I read the cases again. I was wrong, which is a good thing for a judge to admit he was wrong. He read the cases. There was no requirement. There's a case as recent as 2002 from our Supreme Court. It's almost on all fours with this case. Nobody disputes that. He doesn't dispute it. You don't dispute it. Well, then we get to the Steiner affidavit. The Steiner affidavit is unrebutted, uncontroverted, and is deemed admitted because it was not challenged in the trial court. That would be the do-over to let them challenge it. The affidavit met the three requirements of the Pekin policy, unlike the other policies. Clearly states, Pekin, we cannot deny a claim unless three things. Death occurs within two years of the policy. Antonio Turner died within three months of the policy issuance. An answer in the application was not true. And third, if Pekin had known the truth, Pekin would not have issued the policy. Diane Steiner, who is an officer of the corporation, signed an affidavit that following the death she conducted a claim investigation, the same as in American Family before the Supreme Court. She obtained the medical records. She saw that he had been diagnosed twice within ten years of the policy issuance with high blood pressure and was told to consult a physician. She didn't interpret medical records. She merely stated in her affidavit… Does Pekin ever insure people with high blood pressure? Oh, I imagine they do, Your Honor. However, she stated in an uncontroverted manner that had Pekin known the truth, it would not have issued the policy. This isn't a situation where somebody with high blood pressure known to Pekin was going to be raided. That's not the issue here. It's this policy, the policy that was in effect when this fellow died, would not have been issued had they known the truth. That was unrebutted. Now, the… Maybe it would be good to take Mrs. Steiner's affidavit or deposition. They probably should have. The plaintiff didn't. Why would they have done that? The judge had already ruled in their favor on the basic issue. Why would they do that? Well, you see the affidavit come back in support of a cross motion for summary judgment, which is a typical response by a defendant to a plaintiff's motion for summary judgment in the circuit court. And attached to it is the affidavit that's been around. Now we're in August. The affidavit's been around since October. It still has never been attacked, questioned, the subject of a motion to strike. In fact, in their brief, they make the comment to the effect that the affidavit was insufficient as a matter of law. Wow. What better reason than a one-paragraph motion to strike? Judge, strike the affidavit. It's insufficient as a matter of law. Instead, the affidavit was never challenged by motion or otherwise. And absent the affidavit being attacked by motion, it's waived. The argument, Your Honors, heard is waived.  This is a classic request for renewal. You have to file a motion to strike an affidavit on a motion for summary judgment? Yes. There are cases that stay. You make objections to an affidavit in your brief. It's waived. It has to be in a separate motion challenging the affidavit. The trial judge can't just look at the affidavit and say, oh, this states a conclusion. I'm going to deny the motion for summary judgment? The judge agreed with the affidavit. The judge accepted the affidavit. He said the affidavit was well-founded. My question is, do you always have to file a motion to strike an affidavit in advance of a motion for summary judgment? The trial judge can't simply say, oh, I don't think this is very persuasive. I think this states a conclusion, and therefore I'm going to deny the motion for summary judgment? I have not seen that, Your Honor. I have seen when you question an affidavit, you attack it by motion. The case law says you can't even make the argument in a memorandum. It must be by separate motion. Now, a judge with that type of a motion can then say what Your Honor just said. The affidavit doesn't comply with 191A. It's a conclusory whatever, and I will strike it. I find a question of fact motion for summary judgment denied. Bear in mind the plaintiff's position had never, ever, ever been to question the decision of Beacon Insurance Company. The sole purpose of this lawsuit was to establish that this policy was incontestable because the plaintiff was on a false premise. The plaintiff was on the premise that the judge was on a false premise. Well, it was created not by the judge. It was created by the plaintiff. Created by the plaintiff. Correct. The judge bought it. Bought it? Yeah. Everything in this lawsuit was driven by the plaintiff. This reminds me of Animal House. The plaintiff was on double secret probation. And bang. I don't think Judge Jones was like Dean Wormer. The fact is even when the plaintiff realized that perhaps I need discovery, the plaintiff, you just heard Mr. Martinkus tell us about 191A. Well, we could tell you all about 191B because the affidavit he submitted, unfortunately, was his affidavit. And it didn't remotely comply with the requirements of Supreme Court Rule 191B. And we moved to strike the affidavit. And that motion was granted by Judge Jones. All of which was known to the plaintiff. All these motions were there before these hearings. In fact, the plaintiff had a second, let's call it, not a second bite at the apple in the motion for reconsideration, which was the first do-over or mulligan thrown to the plaintiff. They made these same arguments, all of which were rejected. So that's when the judge said that he basically apologized. I think I may have done you a disservice, but you don't give me a reason to allow discovery. Your 191B affidavit is improper. It's conclusory. It doesn't tell me who you would depose. It doesn't tell me what they would say. It doesn't contain facts. It only contains conclusions. And it's not signed by the plaintiff. It's signed by you. It's not a 191B affidavit by any stretch of the imagination. It was properly stricken. You talk about what can the court do. The request for discovery was one sentence in a reply brief. Again, this is the case the plaintiff wished he had to do over again. Because it didn't get it right the first time. The Sands case, again, was a co-defendant left holding the bag. And this court said, unpreparedness is not a ground for a continuance. This court said the same thing in Williams v. Covenant Hospital about five years after Sands. Unpreparedness is not a ground for a continuance. Unpreparedness, if we had a crystal ball, we could probably predict how a judge would rule. And I understand the plaintiff tells this court, it's a widow with two children. She doesn't have a lot of money. If I did this discovery, I'd probably be sued. Well, a lot of conjecture and speculation on the plaintiff's part, a lot of backpedaling and a lot of wishful thinking, all of which, in fact, Judge Jones referred to as wishful thinking at fishing expedition. It's what he called the request for discovery because it wasn't properly premised. If you look at this case, Beacon from the get-go challenged the plaintiff's position. Beacon from the get-go said, no, you do not have to file a suit to rescind a policy. Since 1924, no court in this state has said you have to file a suit to rescind a policy. Lauer, the Supreme Court had this case, almost these facts before it in Lauer. A fellow with terminal lung cancer diagnosed in May of 96, chemotherapy in 96 and 97, applies for and receives a life insurance policy in April of 1997. He dies two weeks short of the contestability period's ending. The insurance company does a standard claim investigation, according to the Supreme Court. The claim investigation was conducted by receiving the medical records. The first thing they realized is they issued a life insurance policy to someone who lied, who didn't disclose he had terminal lung cancer. A letter was sent to the beneficiary saying, we dishonored the claim and we returned the premium. Same thing we did here. The court looked at section 224C of the insurance code and said, death is within two years, the policy is contestable, the insurance company is entitled to rescind. The court also said that the plaintiff focused solely, solely on whether the policy was contestable and had not argued anywhere that if the policy was not contestable, if they were entitled to rescind. The Supreme Court held that with weight. The Supreme Court said, when you read a statute, you're supposed to read it to make sense and you're not supposed to add, as this court well knows, exceptions, limitations, or conditions which depart from its plain meaning. They didn't find anything in there about having to file suit or affirmative conduct. They merely looked at the statute. 224C says two years, if he dies within two years of issuance, the policy is contestable. Later than two years, it's not. This fellow died two weeks short of the end of the contestability period. The purpose of it, even the old Supreme Court cases, say the purpose of the contestability period is to allow the insurance company the opportunity to discover if there's been fraud, and if so, to rescind the policy. Two years comes and goes, they forever hold their peace no matter what they discover, even though fraud vitiates the contract. That's what was done here. That was what was done in Lauer, and it was approved by our Supreme Court. What happened here, I believe, is that the trial judge got it right when he read the cases the second time, and he made his decision. All these motions were known to the plaintiff. The position was known to the plaintiff. The plaintiff chose not to do anything. If this court writes an opinion in reversing that, it in effect is going to tell the plaintiff's partner, if a judge rules in any particular way, in an interlocutory manner, you're okay. You can sit back and wait until the defendant brings on another motion to determine what, if anything, new or different you're going to do. I don't think that's the message this court wants to send. Do you think it's a proper activity for an attorney to conduct discovery that's a waste of time? We hear that about lawyers a lot, that they're just out to make money. They're just out to bill their clients, and they waste a lot of time taking unnecessary actions. Well, the discovery in this case would not have been a, I don't know how it could be called a waste of time. It would have been within the rules. It would have been proper. Within the rules, but isn't it appropriate not to do discovery that is unnecessary? Well, first of all, with respect to, for example, the Steiner affidavit, it wasn't stricken. It wasn't rejected. A motion to dismiss was denied. A classic interlocutory ruling. The plaintiff then figured, okay, motion to dismiss denied. I will go ahead with a motion for summary. Didn't do it immediately. Waited five months. And in the interim, what did he do? Answers, affirmative defenses, and a counterclaim. So all of these issues were still before the plaintiff. We then go in on a Rule 308 certification motion. Again, the same position as before the plaintiff. Nothing's clicking there, though. They're not doing anything, except they just say, okay, now we're going to file a motion for summary judgment. We're going to rely on 90-year-old cases. Not that there's anything wrong with 90-year-old cases, except they didn't apply. The judge said when he read them, either the first or second time, they don't apply. That's not this case. You don't have to file suit. This policy was correctly rescinded, and you don't give me any reason to continue to allow discovery or to do anything other than to find your affidavit was improper, Mr. Martinkus, and the Steiner affidavit was well taken. And for all these reasons, Your Honor, I respectfully ask this Court to affirm and not throw a mulligan at the plaintiff in this case. Thank you. Thank you. Mr. Martinkus. I don't know about mulligans and things of that nature. I do know that I think counsel is very articulate, but I think the issue he talks about gets really clouded here. It's just not how he says it at all. That's not what happened in the least. I also really believe he's wrong when he says that a judge doesn't have an independent duty to determine whether or not an affidavit is competent. If Mrs. Steiner's affidavit simply says, I think we should win, and I don't file a motion to strike it, is that the basis to grant sermon judgment? I think counsel is dead wrong in that. I think that the Court on its own has to look to see whether or not there's competent evidence, evidence that could be admissible at trial, non-conclusory, that would support it. Steiner's affidavit does not do it. This issue about we should have known this and that. He wasn't at issue. I mean, there was nothing upon which the trial court should have granted summary judgment because they did not move to have the court reconsider its earlier position that denied Pekin's ability to rescind the contract. They never did anything. So talk about me sitting back and doing nothing. The court had ruled in my favor. They did nothing. They wrongfully filed an affirmative defense and a counterclaim based upon a substantive ruling dismissing and excluding that. They're the ones that were wrong in this, not me. And moreover, they say, well, we didn't set this. Well, I put in the brief the protocol. Champion County's protocol, this is Judge Zafon, it says that August of 2009, it says the court will set the hearing and give notice to parties and counsel via the email address. And that's what the court did with respect to every other motion. He didn't do it on this one because he firmly believed that there was no need to. He had ruled in my favor. He thought that the only thing left was getting a judgment and having that motion heard. That's the real truth of the matter. And the thing is this. I do think it's sanctionable, frankly, for an attorney to engage in discovery on issues that are resolved. What purpose would I have had in spending my client's money that they didn't have on issues for which the court had ruled they were barred from proceeding on? It's ludicrous. Their position is ludicrous on this. That's what makes lawyers look bad. We go out and do things for absolutely no reason. The moment that the trial court changed its ruling, fine, now I can engage in discovery. The problem is it changed its ruling two minutes before it granted their summary judgment. How could I have filed a 191B affidavit? I couldn't have. I had no access to know what, in fact, he could have and so forth. That's why I asked the court to stay the hearing, a motion to continue to stay it. It would be like if you file a complaint, they, with their answer, file a motion for summary judgment. I can't file an affidavit as to what information may or may not be in there. We asked the court to stay it, to give me an opportunity. Here, no, case management conference is done. We have no issues with respect to when discovery would have to be done, and there was no need for discovery. This is a case where we're not asking the court to do anything. There's no position here, counsel's suggestion that you give the wrong message. That's nonsense. The right message is this. If someone buys insurance and the insurance company rescinds it and gives the plaintiff an opportunity to see if it's a legitimate rescission, we may conclude it is. We may conclude it is if you reverse this. But for just them to take the money and then decide to rescind according to their argument, well, that's just nonsense. In this case, we had no opportunity to look and determine. The Steiner affidavit is woefully inadequate. It doesn't attach the documents upon which it relies, and it's conclusory and does not set forth facts that would be admissible in evidence. I hope you reverse it. Thank you. Thank you. I take this matter under advisement and stand in recess until 1 o'clock.